IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, § § § § Plaintiff, § § VS. § § JOLEIGH ARES d/b/a KNOCK OUT § REPAIRS and ANNA MONTERO as wife § and representative of the ESTATE OF § ANGEL MONTERO and as next friend of § ANGEL GUADALUPE MONTERO, § ONEIDA LEE MONTERO, BRANDON § DANIEL MONTERO, MIRANDA § LAYLANY MONTERO and TOMASA § CASTILLO TORRES § § Defendants. § | CIVIL ACTION NO. _____ |

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S
<u>COMPLAINT SEEKING DECLARATORY JUDGMENT</u>**

TO THE HONORABLE COURT:

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty"), hereby files this Complaint seeking a declaratory judgment, and in support respectfully shows the Court as follows:

**I.
PARTIES**

1.      Atlantic Casualty is a North Carolina corporation and has its principal place of business in North Carolina. Atlantic Casualty is not a citizen of Texas.

2.      Defendant Joleigh Ares d/b/a Knock Out Repairs ("Ares") is an individual and a citizen of Texas, who can be served with process at 1000 E. Expressway 83, Weslaco, Texas 78596-4523 and/or at 1000 E. Expressway 83, La Feria, Texas 78559.

3. Anna Montero, as wife and representative of the Estate of Angel Montero and as next friend of Angel Guadalupe Montero, Oneida Lee Montero, Brandon Daniel Montero, and Miranda Laylany Montero and Tomasa Castillo Torres ("Underlying Lawsuit Plaintiff") is an individual and citizen of Texas, who can be served with process at 911 San Martin Street, San Juan, Texas 78589.

## II.
## JURISDICTION

4. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiff is a citizen of a different state than each Defendant, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. The Court has personal jurisdiction over all Defendants because they are citizens and residents of the state of Texas.

## III.
## VENUE

6. Venue is proper in this Court under 28 U.S.C. § 1391(a)(1), as Defendant Montero resides within this judicial district and upon information and belief Defendant Ares resides within this judicial district.

## IV.
## FACTS

7. Atlantic Casualty brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

8. Defendant Ares was insured under Atlantic Casualty commercial general liability policy number L086024479 (hereinafter the "Policy). (A true and correct copy of the Policy is attached to this Complaint and incorporated herein as if verbatim as Exhibit 1.) The effective date of the Policy was April 13, 2010 through April 13, 2011.

9. This declaratory judgment action arises from a Texas state court lawsuit filed by Anna Montero as wife and representative of the Estate of Angel Montero and as next friend of Angel Guadalupe Montero, Oneida Lee Montero, Brandon Daniel Montero, Miranda Laylany Montero, and Tomasa Castillo Torres ("Underlying Lawsuit Plaintiff") against Joleigh Ares and George C. Ruiz ("Ruiz"). That lawsuit is styled and numbered *Anna Montero as wife and representative of the Estate of Angel Montero and as next friend of Angel Guadalupe Montero, Oneida lee Montero, Brandon Daniel Montero, and Miranda Laylany Montero and Tomasa Castillo Torres v. Joleigh Ares and George C. Ruiz.*, cause No. 2010-DCL-04775 in the 107th Judicial District Court of Cameron County, Texas (the "Underlying Lawsuit"). (A true and correct copy of the Underlying Lawsuit is attached to this Complaint and incorporated herein as if verbatim as Exhibit 2.)

10. According to the policy between Atlantic Casualty and Ares, extrinsic evidence outside of the facts plead by any claimant can be used to determine whether a lawsuit is seeking "Bodily Injury." The policy further expressly provides that Atlantic Casualty's determination regarding any defense obligation under the Policy may be made on evidence or information extrinsic to Plaintiff's pleading.

11. Atlantic Casualty's insured, Ares, subcontracted with American Mobile Transport to transport, install, and level mobile homes. American Mobile Transport in turn subcontracted with Mr. Sergio Rayon ("Rayon") to set up and level the mobile home. On the date of the alleged accident, Angel Montero Castillo (the "Decedent") was employed by Rayon.

12. Based on information and belief, the Underlying Lawsuit Plaintiff's lawsuit arises from fatal injuries sustained by the Decedent when a mobile home he was setting up fell off of a jack provided by Rayon and onto the Decedent.

13. Plaintiff's state court petition simply alleges that the Decedent's death was the proximate result of the wrongful act, neglect, carelessness, unskillfulness, and gross negligence of Ares and Ruiz. The Underlying Lawsuit Plaintiff seeks actual and exemplary damages, costs, and pre- and post-judgment interest from Ares and Ruiz for past and future damages for pecuniary loss, including the loss of the care, maintenance, support, services, advise, counsel and reasonable contributions of a pecuniary value of Decedent. The Underlying Lawsuit Plaintiff also seeks past and future damages for loss of companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society of Decedent as well as past and future mental anguish, including emotional pain, torment, and suffering experienced because of the death of Decedent.

## V.
## DECLARATORY JUDGMENT

14. To the extent not inconsistent herewith, Paragraphs 1-13 are incorporated herein by reference.

15. Atlantic Casualty seeks a declaration from this Court that it has no duty to defend or indemnify Joleigh Ares d/b/a Knock Out Repairs for the claims asserted by Anna Montero as wife and representative of the Estate of Angel Montero and as next friend of Angel Guadalupe Montero, Oneida lee Montero, Brandon Daniel Montero, and Miranda Laylany Montero and Tomasa Castillo Torres in the Underlying Lawsuit. Atlantic Casualty has named Joleigh Ares d/b/a Knock Out Repairs as a Defendant because Joleigh Ares d/b/a Knock Out Repairs has sought a defense from Atlantic Casualty in the Underlying Lawsuit. Joleigh Ares d/b/a Knock Out Repairs is the named insured under the Atlantic Casualty policy.

16. Atlantic Casualty has named the Underlying Lawsuit Plaintiff as a Defendant in this lawsuit because Plaintiff, as wife and representative of Decedent's estate and as next friend

of Angel Guadalupe Montero, Oneida lee Montero, Brandon Daniel Montero, and Miranda Laylany Montero and Tomasa Castillo Torres is a potential judgment creditor in the Underlying Lawsuit, and as such, there is an actual controversy under the Declaratory Judgment Act between them and Atlantic Casualty.

17. As parties to this suit, these parties will be bound by any judgment rendered in this declaratory judgment action with respect to coverage under the Policy. Atlantic Casualty reserves all rights for reimbursement of costs and fees paid to the extent allowable under Texas law and deemed appropriate by this Court.

18. The Atlantic Casualty policy provides as follows for certain "bodily injury" or "property damage" coverage caused by an "accident" or "occurrence":

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

>> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b**. This insurance applies to "bodily injury" and "property damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory";
> **(2)** The "bodily injury" or "property damage" occurs during the policy period.

19. The policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy defines "occurrence" to include "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

20. Based on the facts of the alleged incident, however, the Atlantic Casualty policy does not apply, and Atlantic Casualty has no duty to defend or indemnify Ares or indemnity the Underlying Lawsuit Plaintiffs.

21. The policy contains an Amended Definitions section and Use of Extrinsic Evidence section which allows the use of extrinsic evidence outside of the facts plead in the Underlying Lawsuit to determine if a lawsuit is seeking "bodily injury." This provides:

> **AMENDED DEFINITIONS AND USE OF EXTRINSIC EVIDENCE**
>
> Section V – DEFINITIONS; 3. Is amended by added this paragraph to the Commercial General Liability Form:
>
>> We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a law suit is seeking "Bodily Injury."
>
> Section V – DEFINITIONS; 14. h. is added to the Commercial General Liability Form:
>
>> h. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a law suit is seeking "Personal and Advertising Injury."

> Section V – DEFINITIONS; 17. c. and d. is added to the Commercial General Liability form:
>
> > c. "Property Damage" does not include any cost or expense to repair, replace, or complete any work to any property that you (or any insured) are otherwise obligated to repair, replace or complete pursuant to the terms of any contract with that person.
> >
> > d. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a law suit is seeking "Property Damage."

22. Further, Atlantic Casualty can determine its defense obligation to Ares under the policy based on evidence or information extrinsic to any complaint or pleading:

> **LIMITATION – DUTY TO DEFEND**
>
> Where there is no coverage under this policy, there is no duty to defend any insured. We are entitled to all rights of reimbursement from you or any insured or indemnitee for sums paid under this policy if it is determined that there is no coverage under the terms, conditions or exclusions of this policy.
>
> Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us.
>
> We have the right but not the duty to defend. The preceding sentence only applies to those qualifying as an additional insured by way of an additional insured endorsement.

23. Certain exclusions also apply to preclude coverage based on the facts surrounding the death of Decedent and the claims asserted in the Underlying Lawsuit. First, the policy contains an exclusion for Injury to Employees, Contractors and Employees of Contractors:

> **EXCLUSION OF INJURY TO EMPLOYEES,**
> **CONTRACTORS AND EMPLOYEEES OF CONTRACTORS**
>
> Exclusion e. Employer's Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

(i) "bodily injury" to any "employee" of any insured arising out of or in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business.

(ii) "bodily injury" to any "contractor" for which any insured may become liable in any capacity; or

(iii) "bodily injury" sustained by the spouse, child, parent brother or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG0001 is replaced by the following:

"**Employee**" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, "**contractor**" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, and independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these person or entities mentioned herein.

All other terms and conditions remain unchanged.

24. This exclusion applies to broadly preclude coverage for any damages Ares is obligated to pay due to the actions or inactions of Ares' contractors or subcontractors, as well as for injury to the "employees" or "contractors" of the insureds "contractors," "independent contractors," "subcontractors," "and any and all persons working for and or providing services and or materials of any kind for these persons." Pursuant to the express terms of this exclusion, Ares is not entitled to coverage because the Decedent was an "employee" or "contractor" of Ares' independent contractor/subcontractor. Thus, Atlantic Casualty seeks a determination that it owes no coverage to Ares and no duty to indemnify the Underlying Lawsuit Plaintiff.

25. The claims against Ares are also not covered because they are excluded by the Independent Contractor/Subcontractor exclusion which provides:

### EXCLUSION-INDEPENDENT CONTRACTORS/SUBCONTRACTORS

You or any insured are not covered for claims, loss, costs or expenses arising out of the action(s) or inaction(s) of independent contractors/subcontractors for or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors/subcontractors on behalf of any insured.

26. Under the terms of the Independent Contractor exclusion, the Policy expressly excludes claims arising out of subcontractor or independent contractor acts or omissions. The facts surrounding the alleged incident show that the Underlying Lawsuit arises from the insured's independent contractors/subcontractor's "actions or inactions" "for or on behalf of [the] insured." Thus, the policy's Independent Contractor exclusion clearly operates to preclude coverage. Atlantic Casualty seeks a declaration that under the Independent

Contractors/Subcontractors exclusion, there is no duty to defend or indemnify Ares or the Underlying Lawsuit Plaintiff for the claims brought in the Underlying Lawsuit.

    27.    The policy also contains the following exclusions:

> **2. Exclusions**
> This insurance does not apply to:
> \* \* \*
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured" contract; and
>
> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
>
> \* \* \*
>
> **d. Workers' Compensation And Similar Laws**
>
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> \* \* \*

28. To the extent that Ares has any obligation with regard to this matter under any worker's compensation or similar law, the Atlantic Casualty policy does not provide coverage. Additionally, the Atlantic Casualty policy does not provide coverage arising from a breach of the named insured's contractual liability. To the extent Ares agreed to indemnity any person or surety which may pay damages based on the Underlying Lawsuit Plaintiffs' claims, the policy excludes coverage. Based on these exclusions, Atlantic Casualty owes no duty to defend and/or indemnity Ares or the Underlying Lawsuit Plaintiff.

29. The policy also contains an Aircraft, Auto, or Watercraft exclusion which states:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **g. Aircraft, Auto Or Watercraft**
>
> > "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
> >
> > This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
> >
> > This exclusion does not apply to:
> >
> > * * *
> >
> > (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
> >
> > * * *

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S**
<u>**COMPLAINT SEEKING DECLARATORY JUDGMENT**</u> **– Page 11**

30. The policy defines "auto" to mean:

"a land motor vehicle, trailer or semi-trailer designated for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

31. The policy also defines "loading and unloading" to mean:

"the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not including the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

32. The Atlantic Casualty policy's Aircraft, Auto, and Watercraft exclusion precludes coverage to "bodily injury" arising out of the "use or entrustment to others" the use of an "auto" that is owned or operated by or loaned to any insured. The exclusion also excludes from coverage "bodily injury" due to "loading or unloading" from an "auto." The policy defines "auto" to include a trailer designed for use on public roads.

33. Because the Underlying Lawsuit claims are based on Decedent "loading or unloading" a mobile home from a trailer that may be owned or operated by Ms. Ares, which is expressly precluded from coverage, Atlantic Casualty seeks a declaration that it owes no coverage to Defendants.

34. The Atlantic Casualty policy also contains certain coverage restrictions under Section C –Medical Payments, which provides:

**SECTION C – MEDICAL PAYMENTS**

* * *

**2. Exclusions**

We will not pay expenses for "bodily injury":

* * *

**b. Hired Person**
To a person hired to do work for or on behalf of any insured or a tenant of any insured.
* * *

**d. Workers Compensation And Similar Laws**
To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits or similar law.
* * *

**g. Coverage A Exclusion**
Excluded under Coverage A.

35. The Atlantic Casualty policy does not provide coverage to any insured or any person hired to do work for or on behalf of any insured or tenant of any insured. Additionally, the Atlantic Casualty policy does not provide coverage to any person, whether or not an "employee' of any insured, if benefits for "bodily injury" are payable or must be provided under a worker's compensation, disability benefits, or similar law. Pursuant to this section, because the Decedent was hired to do work "for or on behalf' of Ares, the Atlantic Casualty policy does not provide coverage. Further, to the extent that any benefits for "bodily injury" are payable or must be provided under worker's compensation, disability benefits or similar law, coverage is precluded to Ares under the policy. For these reasons, Atlantic Casualty seeks a determination that it owes no coverage to Ares or the Underlying Lawsuit Plaintiff.

36. The policy further precludes coverage for any claim arising from subcontracted work where the subcontractors are not adequately insured. The policy reads:

**SUBCONTRACTORS – DEFINITION OF ADEQUATELY INSURED**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
The classifications used in this policy containing the words "Contractors – Subcontracted Work" apply to that portion of the operations performed for the insured by "adequately insured" subcontractors.

This insurance does not apply to any claim arising from subcontracted work unless:

1) The subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:

    A. General Aggregate Limit
       (Other than Products – Completed Operations)   $1,000,000
       Products – Completed Operations Aggregate Limit $1,000,000
       Each Occurrence Limit                        $1,000,000

    B. Or the limits provided by this policy, whichever are less

2) You maintain a current certificate of insurance for the subcontractor; and

3) A hold harmless agreement in favor of you has been executed with the subcontractor; and/or

4) You are endorsed on the subcontractor's Commercial General Liability policy as an additional insured.

If all the above conditions are met, the subcontractor will be considered "adequately insured" and exclusion AGL – 005 Exclusion – Independent Contractors/Subcontractors included in the AGL – CO or the AGL COXP combination form attached to this policy is deleted in its entirety.

All other terms and conditions remain unchanged.

    37.    Based upon information and belief, Joeligh Ares d/b/a Knock Out Repairs was not named as an additional insured on subcontractor American Mobile Transport's general liability policy. Based on the application of this Endorsement, coverage is precluded for Ares because

the alleged "bodily injury" arose from subcontracted work and the subcontractors working on the insured's behalf do not meet the policy's definition of "adequately insured." Thus, Atlantic Casualty seeks a declaration that no coverage is afforded to Ares or the Underlying Lawsuit Plaintiff.

38. The policy also contains a Mental Injury exclusion for the following:

### MENTAL INJURY EXCLUSION

We do not cover any claim, loss, costs or expense arising out of emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the forgoing, or any similar injury unless it arises out of actual physical injury to that person.

39. To the extent the Underlying Plaintiffs allege claims, loss, costs, or expenses arising out of emotional distress, mental anguish, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, shock to the nervous system, or any similar injury, or any physical manifestation of the foregoing, the Atlantic Casualty provides no coverage to Ares or the Underlying Lawsuit Plaintiffs.

40. The policy also contains a limit of liability of $1,000,000 each occurrence limit. The Underlying Lawsuit does not state the total amount of damages sought. Accordingly, the potential exists for a judgment that exceeds the available policy limits. In the event Atlantic Casualty is found to owe coverage to Ms. Ares, Atlantic Casualty is not responsible for any judgment in excess of the available limits.

## VI.
## CONCLUSION

41. Pursuant to the above-cited policy provisions, there is no coverage under the Policy for Plaintiffs' claims against Ares because one or more of the exclusions discussed above

apply. As a result, Atlantic Casualty seeks a declaration that it has no duty to defend or indemnify Ares or the Underlying Lawsuit Plaintiff for any of the claims asserted in the Underlying Lawsuit.

## VII.
## PRAYER

For the reasons set forth above, Atlantic Casualty Insurance Company asks for judgment against the Underlying Lawsuit Plaintiffs and Joleigh Ares for:

a. A declaration that Atlantic Casualty owes no duty to defend or indemnify Joleigh Ares d/b/a Knock Out Repairs under the Policy for the allegations made by the Underlying Lawsuit Plaintiffs in the Underlying Lawsuit against Joleigh Ares d/b/a Knock Out Repairs;

b. A declaration that Anna Montero as wife and representative of the Estate of Angel Montero and as next friend of Angel Guadalupe Montero, Oneida lee Montero, Brandon Daniel Montero, and Miranda Laylany Montero and Tomasa Castillo Torres is not entitled to any rights of indemnity under the Policy as a potential judgment creditor of Joleigh Ares d/b/a Knock Out Repairs arising from the Underlying Lawsuit;

c. Costs of court;

d. Interest allowed by law for prejudgment or post-judgment interest; and

e. Reimbursements and all other relief the Court deems proper.

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S**
**COMPLAINT SEEKING DECLARATORY JUDGMENT** – Page 16

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: *Camille Johnson*
Camille Johnson
State Bar No. 10686600
Southern Bar No. 16414
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: camille@ssjmlaw.com